# FRANK A. DeNUNZIO *vs.* JOHN DeNUNZIO ET AL.

Third Judicial District, New Haven, January Term, 1916.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

Mere words expressive of assent upon the part of the buyer to the terms of a contract of sale of personal property, cannot satisfy the requirements of the statute of frauds (Sales Act, Public Acts of 1907, Chap. 212, § 4) that he should "accept" and "actually receive" a part of the property sold. To comply with the statute in this respect there must be a delivery of the property, either actual or constructive, by the seller, and an assumption of possession and control of it by the buyer, with a mutual intent to vest its ownership in the latter.

In the present case the plaintiff had orally agreed with the defendants to sell them for $550, and they had agreed to buy, his shares of stock in a joint-stock corporation which the three parties—who were at all times its only stockholders—had theretofore organized to carry on a general grocery business. At this time the certificate of the plaintiff's stock was in his safe in the store of the corporation, and he offered to sign it and deliver it to the defendants, but they told him then and at different times thereafter to leave it where it was and it did in fact at all times thereafter remain in his possession. After this agreement the defendants alone conducted the business of the corporation, supposing themselves to be the exclusive owners of all of its assets, as well as the owners of the plaintiff's shares of stock, until the bankruptcy of the corporation about two months later. In a suit to recover the purchase price of the stock, it was *held* that there had been no acceptance and receipt of the shares of stock as required by the statute.

While a stockholder has a right to participate in the management of the corporation and to share in the profits when declared as dividends, he has no legal title to any part of the corporate assets until their pro rata distribution upon a dissolution of the corporation.

Shares of stock in a corporation are personal property, and a contract for their sale, if valued at $100 or more, is within the statute of frauds (Sales Act, Public Acts of 1907, Chap. 212, § 4).

The actual receipt of personal property by the buyer necessarily implies a delivery upon the part of the seller.

To effect a completed legal transfer of shares of stock, a stock certificate should be executed and delivered by the stockholder to the transferee and returned by the latter to the corporation for a notation of

the transfer upon its books, and the corporation should then deliver to the transferee a new certificate in lieu of the old.

The equitable title to stock may be vested in the transferee upon delivery to and acceptance by him of the stock certificate with intent to transfer it to him, with or without a power of attorney to make the transfer.

The law recognizes that there may be a constructive delivery and acceptance of personal property sold, resulting from acts and conduct of the parties in dealing with the property, whereby their relations to it have been changed, notwithstanding there is no manual delivery or actual change of custody; and the same principle applies to the transfer of a chose in action.

Proof of a constructive delivery and acceptance must be clear and unequivocal.

The rights of creditors and purchasers without notice cannot be affected by a mere symbolical or constructive acceptance and receipt of shares of stock, however good that may be as between the original parties.

The assets of a corporation belong to it and not to its stockholders individually. Primarily these assets are dedicated to the uses of the corporation and the payment of its debts, after which, upon dissolution of the corporation, the balance is distributable pro rata among the shareholders.

Submitted on briefs January 18th—decided April 19th, 1916.

ACTION to recover the purchase price of certain shares of stock, and for money loaned and rent due, brought to and tried by the Court of Common Pleas in Fairfield County, *Scott, J.;* facts found and judgment rendered in favor of the plaintiff for $580, from which the defendants appealed. *Error, judgment to be entered for defendants.*

The court disallowed the claim for rent, and made no finding as to the claim for moneys loaned.

As to the claim to recover the purchase price for thirty-three shares of stock of the DeNunzio Company, Incorporated, sold by the plaintiff to the defendants, for which sum judgment was rendered in favor of the plaintiff, the finding discloses the following facts: The plaintiff and the two defendants in March, 1914, formed a joint-stock corporation called The DeNunzio Company,

Incorporated, having an authorized capital of $10,000 and a paid in capital of $4,100 divided into eighty-three shares of $50 each, thirty-three of which were issued to plaintiff and twenty-five to each of the defendants. The plaintiff and defendants were the only officers and directors of the corporation up to June 12th, 1914. The corporation did, and continued to do, a general grocery business up to the time it went into bankruptcy shortly after said June 12th. On that day the defendants accepted an offer of the plaintiff to sell out his interest in the corporation for $550. No part of the purchase price was paid, and no memorandum in writing of such sale was signed by either of the defendants or their agents. At the time of the sale the plaintiff stated to the defendants that his certificate for the thirty-three shares of stock was in his safe in the store of the corporation and he would get it and sign it and deliver it to the defendants, but they told him to leave it where it was, and subsequently, at different times, the plaintiff made similar statements to the defendants and they made a similar answer. Up to June 12th the plaintiff and defendants had together conducted the business; after this date the defendants alone conducted it and had the exclusive possession of its assets until the bankruptcy; and after this date the plaintiff never transacted any business for the corporation except to sign and swear to such papers as he was advised were necessary to carry on the voluntary bankruptcy proceeding. Both plaintiff and defendants were ignorant of stock companies, and regarded the action taken as the legal acquirement by the defendants of the plaintiff's interest in the assets of the corporation and of his shares of stock. It was the understanding of the plaintiff and defendants that after June 12th the defendants owned said thirty-three shares of stock and all of the assets of the corporation.

*William H. Cable,* for the appellants (defendants).

No counsel appeared for the appellee (plaintiff).

WHEELER, J. The shares of stock which the plaintiff owned in the DeNunzio Company, Incorporated, gave him the right to share in the management of the corporation, in the profits when declared as dividends, and in the assets of the corporation upon dissolution. Until dissolution he had no legal title to any part of the property of the corporation. The shares of stock were personal property, being a chose in action. *Worth* v. *Forest,* 15 Conn. 400. The contract for the sale of the plaintiff's stock to the defendants was within the statute of frauds, since it was a chose in action and its consideration exceeded $100. The contract was enforceable if (a) the defendants accepted a part of the stock and actually received it, or (b) gave something in earnest to bind the contract, or in part payment, or (c) some note or memorandum in writing of the contract or sale was signed by the defendants or their agents in that behalf. Sales Act, Public Acts of 1907, Chap. 212, § 4. Nothing was given to bind the bargain or in part payment, and no note or memorandum of the contract or sale was made.

This action, therefore, cannot be maintained, unless the circumstances of the case show an acceptance by the defendants of a part of the stock and an actual receipt of the same by them. *Devine* v. *Warner,* 75 Conn. 375, 377, 53 Atl. 782. The defendants will be deemed to have accepted the stock if it appears that they accepted it, or if the stock has been delivered to them and they did any act in relation to it which was inconsistent with the ownership of the plaintiff seller; Public Acts of 1907, Chap. 212, p. 777, § 48; and the acceptance may be before or after the receipt. An actual

receipt would necessarily imply and hence require a delivery by the plaintiff and a receipt by the defendants of the stock with an intention on the part of the parties to vest in the defendants the possession and right of possession to this stock. So that two questions were present: (1) Did the plaintiff part with and the defendants receive the possession and control of the stock? (2) Did the defendants, either before or after the receipt, accept the stock as that purchased? *Devine* v. *Warner*, 75 Conn. 375, 379, 53 Atl. 782. "Mere words indicative merely of the parties' assent to the agreement of sale" will not prove either an acceptance or a receipt. *Devine* v. *Warner*, *supra*, 380; *Hinchman* v. *Lincoln*, 124 U. S. 38, 8 Sup. Ct. 369.

There was no delivery of the certificate of stock to the defendants, and no receipt by them of the certificate of stock. The trial court held that "the acceptance and use by the defendants of the entire assets of the corporation of which they and the plaintiff were the sole stockholders, with the mutual intention of thereby transferring the interest of the plaintiff to themselves, constituted a sufficient performance of the contract of sale to satisfy the statute of frauds, notwithstanding the fact that the shares of stock were, by the request of the defendants, retained in the plaintiff's safe and were never signed over or delivered to the defendants." The court thus held that these circumstances constituted the acceptance and actual receipt required by the statute.

We think this conclusion erroneous. A completed legal transfer of stock requires (1) an assignment and delivery of the certificate to the transferee; (2) a delivery of the stock to the corporation issuing it, a notation upon the books of the corporation of the transfer, and a delivery to the transferee of a new certificate of stock in the place of the old. *Reed* v. *Copeland*, 50

Conn. 472, 488. The equitable title to stock may be vested in the transferee upon delivery to and acceptance by him of the certificate of stock, with intent to transfer it to him, and with or without a power to transfer. Such a transfer we hold good between the parties, upon the theory that the delivery of the certificate, which is the muniment of title, is a symbolical delivery of the stock. *Reed* v. *Copeland,* 50 Conn. 472, 488; *Winslow* v. *Fletcher,* 53 Conn. 390, 398; *French* v. *White* (78 Vt. 89, 62 Atl. 35), 2 L. R. A. (N. S.) 804 note. We recognize, also, that there may be a constructive delivery and acceptance, unaccompanied by a manual delivery or actual change of custody, resulting from acts and conduct from dealing with goods when there has been a change in the relation of the parties to the goods. *Devine* v. *Warner,* 75 Conn. 375, 380, 53 Atl. 782; *Garfield* v. *Paris,* 93 U. S. 557; 49 Amer. Dec. note 329, 334. The same principle applies to the transfer of a chose in action. The proof of a constructive delivery and acceptance must be clear and unequivocal. The instances for the application of this principle to the transfer of stock will be infrequent compared to those with reference to goods. Evidence of payment by the corporation of a dividend to the transferee and his acceptance of it, would tend strongly to prove a constructive delivery and acceptance of a transfer of stock. Both acceptance and receipt, and therefore delivery, may be inferred from the attendant circumstances. However good as a transfer of stock between the parties the symbolical or constructive acceptance and receipt may be, it will not affect the rights of creditors or purchasers without notice.

In this case the defendants never had possession of the certificate of stock, which remained in the hands of the transferor, the plaintiff. It was never assigned to them, nor was a power of attorney to transfer de-

livered to them or made out. The corporation never lost its control of its assets; this continued until its bankruptcy. The plaintiff as an officer and stockholder never had possession of any of the assets of the corporation in his own right. His possession as an officer and stockholder was that of the corporation. As an individual he never had any corporate assets which he could turn over to the defendants, and no right to the possession of any which he could give to them. The capital stock of a corporation represents its assets, dedicated primarily to the uses of the corporation and the payment of its debts, and secondarily, upon dissolution and after payment of its debts, to its shareholders on a pro rata distribution. The plaintiff did not give the defendants possession of any assets of the corporation, for he had no control of, or title to, these, which he could transfer; and the defendants never obtained any use of assets transferred to them by the plaintiff, as the trial court assumes as the basis of its conclusion. Their relation to the assets was that of officers and stockholders acting for the corporation, and that relation before this contract of sale was identical with that after its making. Properly analyzed, the finding goes no further than to present a case of "mere words indicative merely of the parties' assent to the agreement of sale"; and we have held that mere words will not constitute an acceptance and receipt sufficient to satisfy the statute of frauds.

We find one instance where the reasoning of the trial court has been adopted by a court of last resort. *Ford v. Howgate*, 106 Me. 517, 522, 76 Atl. 939. That case is distinguishable from this, in that no certificate of stock had ever been issued. Aside from that, we cannot concur with the Maine court that the transferee could have done nothing more significant to show his ownership of the stock interest than to enter into the

management of the corporation as an owner. Suppose thereafter the transferor had assigned his stock to a purchaser in good faith, and he had presented his certificate to the corporation for transfer. What was there about the fact of the management of the corporation by the first purchaser which would have charged the last purchaser with notice of it, or of the first purchaser's existence? It is important to corporate management that transfers of stock be made in an orderly manner. An observance of the requirements of the statute of frauds as interpreted by our court, will accomplish this desirable end. It is as essential that a transfer of stock should be supported by written evidence as a transfer of goods. Williston on Sales, § 67.

There is error; the judgment is reversed, and the cause remanded to the Court of Common Pleas in Fairfield County with direction to render judgment for the defendants to recover their costs.

In this opinion the other judges concurred.